HURD PAPER–BAG CO. (ARKELL v.). See Case No. 532.

## Case No. 6,919.

### HURLBERT et al. v. PACIFIC INS. CO.

[2 Sumn. 471.][1]

Circuit Court, D. Massachusetts. May Term, 1837.

MARINE INSURANCE—AGENT—SET-OFF.

1. The right of set-off is limited, at the common law, to cases of mutual connected debts, and does not extend to debts, which are unconnected with each other.

[Cited in Simpson v. Jennings, 15 Neb. 672, 19 N. W. 473.]

2. Where an insurance was effected by an agent, for the benefit of whom it concerned, and a loss was incurred, and the agent brought an action against the underwriters in his own name, for the benefit of the owners of the ship, held, that the underwriters could not set off debts or demands, due from the agent in his own right, against the amount claimed for the loss.

3. A policy of insurance, wherein the underwriters insured Z. Cook, Jr. for E. D. Hurlbert & Co. for whom it concerns, payable to E. D. Hurlbert & Co., contained the following clause; "And in case of loss, such loss shall be paid in sixty days after proof and adjustment thereof, the amount of the premium note, if unpaid, and all sums due to the company from the insured, when such loss becomes due, being first deducted." An action was brought in the name of E. D. Hurlbert & Co., agents, for the benefit of the owners of the ship. Held, that the premium note was to be deducted, whether given by the agent or principal, and that the words, "the insured," applied not to the party, who procured the insurance, but to him for whose benefit it was made, as the owners in the present case.

[Cited in Somes v. Equitable Ins. Co., 12 Gray, 534; Trip v. Pacific Ins. Co., 89 Mass. (7 Allen) 231; Union Ins. Co. v. Grant, 68 Me. 230.]

4. Quaere, if the principal, in the policy above-mentioned, could, with the consent of the agent, sue at common law in his own name.

[Cited in The Samana Co. v. Hall, 55 Fed. 665.]

5. Quaere, if a broker, who acts under a del credere commission, may be considered as the primary debtor to his principal, and, therefore, to all intents, the insured.

Assumpsit on a policy of insurance, dated the 1st of September, 1836, whereby Z. Cook, Jr. for Elisha D. Hurlbert & Co. for whom it may concern, payable to E. D. Hurlbert & Co. caused to be insured, lost or not lost, $3,000 on the schooner Flora, at sea or in port, for twelve months from the 15th day of September, 1836, at noon, and if at sea, on the expiration of the year, to continue at pro rata premium, until her arrival at her port of destination against the usual perils. The declaration averred a total loss by the perils of the seas within the term aforesaid. The cause came on to be heard upon a statement of facts agreed by the parties, as follows: The plaintiffs are commission merchants, resident in New York; and as agents for their employers, frequently cause insur-

[1] [Reported by Charles Sumner, Esq.]

ance to be made in Boston by Mr. Z. Cook, Jr., who has general instructions from them to have all policies effected by their orders made "for whom it concerns payable to them." The insurance in this case was so effected by Mr. Cook, by the orders of the plaintiffs, in behalf of the owners of the vessel insured, who reside in Connecticut. The defendants being liable to pay a total loss on this policy, claim the right to deduct from its amount all sums due and payable to them by the plaintiffs, and to have payment or security for the sum of all the premium notes becoming due to them, on which the plaintiffs are promisors. The parties in interest deny the right of the defendants to deduct any but the premium note given for this insurance. A copy of the policy makes part of this statement; the defendants are to have all the benefit they could derive by force of the provisions of the policy, or by an account duly filed in set-off, which is to be considered as done; no statement of interest under this policy was made to the defendants prior to the loss being claimed.

The policy was in the following words: "This policy of insurance witnesseth, that the president and directors of the Pacific Insurance Company in the city of Boston, do by these presents cause Z. Cook Jr. for E. D. Hurlbert & Co., for whom it concerns, payable to E. D. Hurlbert & Co., to be insured, lost or not lost, three thousand dollars on the schooner Flora, (at sea or in port, for twelve months from the fifteenth day of September, 1836, at noon, and if at sea on the expiration of the year, to continue at pro rata premium until her arrival at her port of destination. The assured may cancel this policy after the expiration of six months, or at any time, should the vessel be sold) whereof is master for this present voyage. ——, or whosoever else shall be master in the said vessel, or by whatsoever other name or names the said vessel, or master thereof, is, or shall be named or called: beginning the adventure upon the said schooner as aforesaid, and to continue during the voyage aforesaid, on the vessel until she shall be arrived and moored at anchor twenty-four hours in safety, and on the property until landed. And it shall be lawful for the said vessel, in her voyage, to proceed and sail to, touch and stay at any ports or places, if thereunto obliged by stress of weather, or other unavoidable accidents, without prejudice to this insurance. Touching the adventures and perils, which the said insurance company are contented to bear, and take upon them in this voyage, they are. of the seas, fire, enemies, pirates, assailing thieves, restraints and detainments of all kings, princes, or people, of what nation or quality soever. barratry of the master (unless the insured be owner of the vessel), and of mariners, and all other losses, and misfortunes, which have, or shall come to the damage of the said schooner, or any part thereof, to

which insurers are liable by the rules and customs of insurance in Boston: provided, that the insurers shall not be liable for any partial loss on hemp and flax, unless the loss amount to twenty per cent. on the whole aggregate value of such articles; nor for any partial loss on sugar, flaxseed, bread, tobacco and rice, unless the loss amount to seven per cent. on the whole aggregate value of such articles; nor for any partial loss on salt, grain, fish, fruit, hides. skins, or other goods that are esteemed perishable in their own nature, unless it amount to seven per cent. on the whole aggregate value of such articles, and happen by stranding; nor for any partial loss on other goods, or on the vessel, or freight, unless it amount to five per cent. exclusive, in each case, of all charges and expenses incurred for the purpose of ascertaining and proving the loss; but the owners of such goods shall recover on a general average. And in case of any loss or misfortune, it shall be lawful for the insured, their factors, servants, and assigns, to sue, labor, and travel for, in and about the defence, safeguard, and recovery of the said schooner, or any part thereof, without prejudice to this insurance, to the charges whereof, the said insurance company will contribute, in proportion as the sum insured is to the whole sum at risk. And so the president and directors aforesaid, are contented, and do hereby bind the capital stock and other common property of the said insurance company, to the insured, their executors, administrators. and assigns, for the true performance of the premises, confessing themselves paid the consideration due unto them for this insurance, by the insured, at and after the rate of eight per cent. per annum, to return pro rata premium for time not used. And it is hereby agreed, that if the insured shall have made any other insurance upon the schooner aforesaid, prior in date to this policy, then the said insurance company shall be answerable only, for so much as the amount of such prior insurance may be deficient towards fully covering the property at risk. whether for the whole voyage, or from one port of lading or discharge to another; and the said insurance company shall return the premium, or a ratable part thereof, upon so much of the sum by them insured, or for such part of the voyage as they shall be exonerated from by such prior insurance, provided. that no return premium shall be made for any passage, whereon the risk has once commenced. And in case of any insurance upon the said schooner, whether it be for the whole or part of the voyage, subsequent in date to this policy, the said insurance company shall nevertheless be answerable, to the full extent of the sum by them herein insured, without right to claim contribution from such subsequent insurers: and shall accordingly be entitled to retain the premium by them received. in the same manner. as if no such subsequent insurance

had been made. And in case of loss, such loss shall be paid in sixty days after proof and adjustment thereof, the amount of the premium note, if unpaid, and all sums due to the company, from the insured, when such loss becomes due, being first deducted, and all sums coming due being first paid or secured to the satisfaction of the said president and directors, they discounting interest for anticipating payment. It is also agreed, that in case of capture or detention, the insured shall not have the right to abandon therefor, until proof is exhibited of condemnation, or of the continuance of the detention (by capture or other arrest) for at least ninety days; and that the insured shall not abandon in consequence of the port of destination being blockaded, but the vessel shall, in such case, have liberty to proceed to another port not blockaded, and there end the voyage, or wait a reasonable time for the blockade of the original port of destination to be raised: and that the acts of the insured or insurers in recovering, saving, and preserving the property insured in case of disaster, shall not be considered a waiver or acceptance of an abandonment. It is also agreed, that the insurers shall not be answerable for any charge, damage, or loss, which may arise in consequence of seizure, or detention, for, or on account of, illicit or prohibited trade, or trade in articles contraband of war; but the judgment of a foreign consular, or colonial court, shall not be conclusive upon the parties, as to the fact of there having been articles contraband of war on board, or as to the fact of an attempt to trade in violation of the laws of nations. It is also agreed, that this policy shall be void in case of its being assigned, transferred, or pledged, without the previous consent in writing of the insurers. It is also agreed, that the insured shall not have the right to abandon the vessel for the amount of damage merely, unless the amount which the insurers would be liable to pay, under an adjustment as of a partial loss, shall exceed half the amount insured: and in case of a total loss of the vessel with salvage, the amount allowed out of the salvage to the officers and crew, for wages earned, or services rendered previously to the loss, shall be considered as so much of the salvage applied to the use of the ship owners, even although the same should be allowed or paid under the name of salvage, and not as wages; and shall accordingly be deducted in adjusting the loss. It is further agreed, that if any dispute shall arise, relating to a loss on this policy, it shall be submitted to the judgment and determination of arbitrators, mutually chosen, whose award in writing shall be conclusive and binding on all parties. The company is not liable for wages or provisions, except in general average. In witness whereof, the president of the said Pacific Insurance Company, hath hereunto subscribed his name, and caused the same to be countersigned by their secretary, at their office in Boston, this first day of September, one thousand eight hundred and thirty-six."

F. C. Loring, for plaintiffs.
C. P. Curtis, for defendants.

STORY, Circuit Justice. The only questions arising upon the statement of facts are, 1st. As to the right of set-off of the defendants of the demands, which they hold against the plaintiffs; 2d. As to the right of deduction of the same demands under a particular clause in the policy, which will be presently brought under notice.

In regard to the right of set-off, either at the common law, or under our statute of set-off (Rev. St. c. 96), it appears to me, that upon the circumstances of the present case it is not at all maintainable. However true it may be, that the right of set-off of mutual demands between the parties is founded in natural justice and equity [2] (a proposition, to which I give my full assent), it is very certain, that the common law has not carried this right into full effect; for by that law the right of set-off is limited to cases of mutual connected debts, and does not extend to debts, which are unconnected with each other. The present case is not one of mutual connected debts. In regard to our Revised Statute of set-off, although it has enlarged the doctrines of the common law, there is no clause in it, which reaches, either in its language or its spirit, a case like the present. It is limited, with few exceptions, to mutual debts or demands between the parties to the action; and it contemplates only such mutual debts and demands, as are due in the same right. In the present case, the suit is brought by the plaintiffs, as mere agents for the benefit of the owners of the Flora. They sue in autre droit. The debts or demands sought to be set off, are not the debts or demands due by these owners; but by the plaintiffs in their own right. So that the suit and the set-off are not in the same right. The case of Gordon v. Church, 2 Caines, 299, is also a direct authority against allowing a set off under such circumstances upon general principles.

Then, as to the second question. The clause in the policy is in the following words. "And in case of loss, such loss shall be paid in sixty days after proof and adjustment thereof, the amount of the premium note, if unpaid, and all sums due to the company from the insured, when such loss becomes due, being first deducted; and all sums coming due, being first paid or secured to the satisfaction of the said president and directors, they discounting interest for anticipating payment." The whole question as to the construction of this clause, turns upon the point, who is "the insured" within its true intent

[2] See Green v. Farmer, 4 Burrows, 2220, 2221; Briggs v. Richmond, 10 Pick. 391; 2 Story. Eq. Jur. c. 37, §§ 1432–1444.

and meaning; for it is clear, that the debts and demands due from that person, and from him alone, are to be recouped from the amount due on the policy. It has been argued, that, by the insured, must be here intended the party, in whose name the insurance is proved to be made; and who may sue for the loss; and, especially, where he is the party, to whom the amount is to be paid in case of loss, and who, therefore, is exclusively entitled to sue on the policy. In the present case, the policy expressly declares, that in case of loss the amount shall be paid to the plaintiffs; and it is added, that, upon any other construction, even the premium note itself upon this very policy could not be deducted. As to this last suggestion, it appears to me, that no such consequence would follow, as the argument supposes. It seems to me, that the true interpretation of the clause authorizes the deduction of the premium note at all events, by whomsoever it may have been given. But it authorizes no other deduction, except of debts or demands due from the insured. In the ordinary case of a suit brought by the principal, who has procured the policy to be made by an agent in his own name, the premium note cannot, unless under special circumstances, be set off, if it has been given by the agent, binding himself personally; because the suit is brought for the right of the principal, and the premium note is the agent's own debt. The case of De Gaminde v. Pigou, 4 Taunt. 246, seems to have proceeded upon this ground. See, also, Cumming v. Forester, 1 Maule & S. 494, 499; Leeds v. Marine Ins. Co., 6 Wheat. [19 U. S.] 565. The clause was, therefore, probably introduced to entitle the underwriters at law to deduct the premium, whether the suit was brought in the name of the principal or of the agent. See Maanss v. Henderson, 1 East, 335.

It appears to me, that the insured, in the sense of the clause, must mean, not the party, who procures the insurance; but the party, for whose benefit the insurance is made. He, and he only can properly be said to be the insured; for he is ultimately to pay the premium and to have the benefit, if a loss occurs. I do not say, that this, the primary meaning of the words, may not be displaced by showing, that the parties to the contract have used them in a different sense, as the designation of the person, in whose name the policy is made. But the language ought to be very clear in its import, which should lead to such a result. The present policy does not seem to me in any manner to justify it. It is true, that by the terms of the policy the loss is payable to the plaintiffs. But on whose account? Plainly on account of the owners of the Flora, for whose benefit it was made. There is not the slightest evidence in the case, that the plaintiffs have become the owners of the policy; or that they acted under a del credere commission; or even that they have a lien upon the same for any

balance of accounts. The probability is, that the money was made payable to them, solely to secure their ordinary commission for the negotiation. The object of making the loss payable to the plaintiffs, is not to change the character of the insurance itself, and to make it an insurance for the agent, and not for the principal; for then the party, having no interest in the property insured, and not the party sustaining the loss, would be entitled to the benefit of the insurance. But the object is, to entitle the agent to sue in his own name for the loss, and to receive it without that right being interfered with by the principal. The principal is still, however, the insured; and the money, when received, is to be accounted for to him. This was the interpretation put upon a similar clause in the case of Jefferson Ins. Co. v. Cotheal, 7 Wend. 72, 82. There is great weight also in the argument ab inconvenienti, that otherwise the debts of the agent, though unknown to the principal, might intercept, in the shape of a set-off, the whole indemnity of the principal. Whether, upon a policy thus framed, the principal, with the consent of the agent, might sue at the common law for the loss, as he clearly could, if this clause about the payment were omitted (without any distinction as to the agent's having a del credere commission, or not), it is unnecessary to decide. In a court of equity, there would not be the slightest difficulty; for, if the lien of the agent were discharged, the principal might sue for the loss in his own name, which shows, that he is to be treated as substantially the insured.

Very little light can be thrown on this subject by any references to the English decisions on set-off. Almost all the cases have turned upon the proper construction of their statutes of set-off in cases of mutual debts and mutual credits, either generally, or in cases of bankruptcy.[3] In Grove v. Dubois, 1 Term R. 112, and Bize v. Dickason, Id. 285, the broker acted under a del credere commission, and having paid the losses to his principal, he was allowed to set off these losses against a claim for premiums by the assignees of a bankrupt. Under such circumstances, it may be fair, as between himself and the underwriters, the policy being made in his name, and the amount being paid, to treat him as the owner of the policy. Moody v. Webster, 3 Pick. 424; Koster v. Eason, 2 Maule & S. 112; and Parker v. Beasley, Id. 423, recognize the like right of set off where the brokers are under a del credere commission, or have a lien by reason of acceptances. See, also, Davies v. Wilkinson, 4 Bing. 573. But where there is neither a del credere commission nor a lien, the right of set-off is held not to exist. Parker v. Smith, 16 East, 382, 386. It would, however, be a great mistake to consider Grove v. Dubois, 1

---

[3] The different statutes will be found in Bab. Set-Off, and Mont. Set-Off.

Term R. 112, from which all the other cases have sprung, an authority to the extent of considering, that where the broker acts under a del credere commission, he is to be considered as the primary debtor to his principal, and therefore, to all intents, the insured. In Baker v. Langhorn, 6 Taunt. 519, and Peele v. Northcote, 7 Taunt. 478, Lord Chief Justice Gibbs repudiated such a notion. See, also, Gall v. Comber, Id. 558. Without going farther into an examination of the English cases on this particular point, resting, as they mainly do, upon the case of Grove v. Dubois, 1 Term R. 112, a case in itself not very satisfactory in its principles, it is sufficient to say, that they furnish no general reasoning applicable to the case before the court. Upon the whole, my opinion is, that there is no right in the defendants to set off or deduct from the amount recoverable on this policy any sums whatsoever due by the plaintiffs to them, except the premium on the policy. Judgment accordingly.