## MESSICK v. RARDIN.
### No. 625.

District Court, E. D. Illinois.
March 6, 1934.

Walter T. Gunn, of Danville, Ill., for plaintiff.

T. N. Cofer, of Charleston, Ill., for defendant.

LINDLEY, Judge.

Plaintiff sues to have certain government bonds held by defendant delivered to her as her property. Defendant, conservator of the National Trust Bank of Charleston, asserts that the bonds do not belong to plaintiff, but that they are the property of the bank.

On March 1, 1933, H. H. Messick, husband of plaintiff, had on general deposit with the bank $7,184.67. This balance remained substantially the same from day to day until March 4, 1933, when it was $7,205.97. Upon this account plaintiff had authority to draw. During all the same period plaintiff had a checking account of $35.95. Plaintiff and her husband, during said period, were the holders of a certificate of deposit issued by said bank April 8, 1932, for $5,000, pay-

able on 30 days' notice "to either of them or the survivor," with interest at 3 per cent. per annum.

On March 1, 1933, plaintiff filed with the bank a written order to it to buy for her through the Federal Reserve Bank $3,500 in 3⅛, 46—49 Treasury bonds, agreeing not to hold the bank liable for purchase or delivery thereof. On the same day the bank ordered the bonds of the Federal Reserve Bank, which institution on March 2d purchased them for $3,405.57 and thereupon charged their cost to the account of the ordering bank and shipped them to the bank in Charleston. The bonds were delivered to the bank by mail on Monday, March 6, 1933. They had reached Charleston on Saturday, March 4th, but no mail delivery was made that day after such arrival. Advice of purchase and terms thereof had been mailed to the bank on March 2d and received by it on March 3d.

The bank closed under the bank moratorium March 4, 1933, and never reopened. The conservator's title dates from March 28th. None of the deposits named has been paid or debited in any amount or any manner. Plaintiff has demanded the bonds and on May 8, 1933, wrote the comptroller claiming them and calling attention to the facts as she understood them. She said that when the bonds arrived there was sufficient money on hand to pay for them; that the bank failed to notify her of their arrival; that she had agreed to pay for them as previously, upon arrival or notification of purchase, as she did not and could not know the exact amount of the purchase price until notice thereof should come from the bank; and that previously upon notification of similar purchases, she had immediately gone to the bank and paid for them.

Plaintiff testified that when she placed the order she said she would settle as previously and that upon four or five similar occasions in the past, the bank had notified her of confirmation or arrival and she had at once settled from money on deposit.

It is plaintiff's theory that the bank acted as her agent and bought the bonds for her as such agent and that the securities are her property in equity, the purchase price of which should be charged against the accounts aforesaid. Defendant contends that the bonds are the property of the bank, never settled for by plaintiff, and that the bank was not bound to charge the purchase price of the bonds against the deposits and in fact could not legally do so.

It is clear that the bank bought the bonds, acquired title thereto, from the Federal Reserve Bank and that it paid therefor with its own funds. But in doing this it was acting under specific instructions from plaintiff so to do. She ordered the bonds, directed the bank to buy the same for her, and agreed to settle therefor as she had previously done, by payment from the deposit upon which she had a right to draw. Clearly, therefore, the bank, in doing all that it did, was acting for plaintiff—was her agent.

Where, then, was the equitable title to these bonds? It is universally the law that where an agent acquires title to property for his principal, he holds the same in equity for that principal. Good faith, essential to equity, so demands. Thus in Follansbe v. Kilbreth, 17 Ill. 522, 65 Am. Dec. 691, where the agent had purchased property in his own name for his principal, the court said: "The complainants acquired an equitable title to the premises the moment the purchase was made, which was at the time subject to all the incidents attaching to such an estate." Equity does not permit a person agreeing to act for another to deal in his business of agency for his own benefit, and, if he takes in his own name a conveyance of an estate which he has agreed to purchase for another, he will, in equity, be considered as holding the estate in trust for his principal. Switzer v. Skiles, 3 Gilman (Ill.) 529, 44 Am. Dec. 723, and 21 Ruling Case Law 830.

Obviously in such situation before the principal's title becomes perfected as against the agent, the former owes the duty to the latter to reimburse him for all liability he has incurred for the principal's benefit. In other words, he must repay to agent the cost of what has been purchased. Thus in 21 R. C. L. 834, § 17, it is said that:

"As a general rule where one is employed or directed by another to do an act in his behalf, the law implies the promise or indemnity by the principal for damages resulting to the agent proximately from the execution of the agency, and for necessary expenses advanced or incurred by the agent in order to consummate that which he is directed to do."

So here plaintiff was bound from the time she ordered the bonds to reimburse her agent, the bank, for what it should pay for the securities and for its expenses incurred in carrying out its principal's order. Then and at all times thereafter, she had with the bank a credit of over $7,000, in the form of

a deposit upon which, as the bank knew, she had a right to draw and a further credit of $5,000 in the form of a certificate of deposit for $5,000 payable either to her or her husband. Upon similar previous occasions she had settled by drawing against the deposit credit. In this instance, she did not do so, because, as she says, the bank did not notify her of the completion of the purchase and of the contemporaneous ascertainment of the exact amount of the purchase price, until after the bank closed its doors. After the latter event occurred, the rights of the parties could not be modified; they were fixed as of that date.

Under well-recognized rules in equity controlling set-off, the bank then had the right to reimburse itself by charging to either the deposit account or the certificate of deposit the amount of the purchase price.

■ A court of equity has inherent power to allow or compel a set-off. This power is independent of statutes allowing a set-off; it was recognized and exercised prior to the enactment of such statutes; and it has not been taken away by their enactment, nor affected by their repeal. 57 Corpus Juris 361.

Speaking otherwise, there is a natural equity that cross-demands should be offset against each other, and that the balance only should be recovered. Hurlbert v. Pacific Ins. Co., 12 F. Cas. 1009, No. 6,919, 2 Sumn. 471. This is particularly true where insolvency intervenes. Goodwin v. Keney, 49 Conn. 563.

■ This doctrine is extended to the rule that on a joint and several demand where both or either of two may recover, a set-off or counterclaim consisting of a demand in favor of defendant against the two plaintiffs suing jointly or against either one of them may, if otherwise without objection, be interposed. It is equally true that in an action on a joint and several demand against one obligor, a payment made by the co-obligor on account of or in part payment of the obligation may be pleaded as a set-off. In other words, a demand that is joint and several may be set off or counterclaimed against a separate demand. Mitchell v. Gibbes, 2 Bay (2 S. C. L.) 475; Pate v. Gray, 18 F. Cas. 1291, No. 10,-794a; Griswold v. Morrison, 53 Cal. App. 93, 200 P. 62; Hayden v. Alton Nat. Bank, 29 Ill. App. 458; Donelson v. Colerain, 4 Metc. (Mass.) 430; Steele v. Sellman, 79 Md. 1, 28 A. 811; Read v. Jeffries, 16 Kan. 534; Moody v. Willis, 41 Miss. 347. The reasoning of Gray v. Rollo, 18 Wall. 629, 21 L. Ed. 927, relied upon by defendant is in accord with what has been said as is that also of In re Carrier (D. C.) 39 F. 193, 198.

■ Here the demand against the bank was vested in plaintiff or her husband. There were no limitations upon her legal right to withdraw any or all of the fund at any time prior to insolvency. When the bank closed, the right of the parties being fixed, the demand of the bank against her, therefore, should in equity be set off against her demand against it. To the court, it seems that such is only equity.

■ The present case partakes of the elements of a prayer for specific performance. It is evident that both the plaintiff and the bank looked to payment for the bonds out of the deposit. Such had been the course of action previously, and it was agreed by the parties that such previous course of dealing should be followed. The bank having closed, therefore, and the bonds having come into the bank's possession, it is only equitable to complete the transaction by compelling the bank to turn over the bonds and take payment for the same out of the demands existing in plaintiff's favor against it.

The case of Davis v. McNair, 48 F.(2d) 494 (C. C. A. 5) is illuminating. The trial court there dismissed a bill in equity which averred that the plaintiff on July 8th had on deposit in the bank over $35,000. On that day he directed the bank to buy for him $35,000 worth of Liberty bonds and offered to pay for same out of his account, but was informed that the bank would purchase the bonds and charge his account with same. The bonds were purchased in New York July 23d. On July 24th the bank closed. The next day a receiver was appointed. The court of review held that the bank's undertaking to purchase bonds in effect changed the debtor-creditor relationship into one of fiduciary character, and that the bank had a right to apply the deposit on the purchase price prior to its insolvency. In equity the bank was treated as having received payment for the bonds. There the court went so far as to extend title of plaintiff to the deposit, inasmuch as the bonds were still held in New York subject to lien for payment.

The facts of the present case do not require us to go to the extent to which the Court of Appeals extended the doctrine in the case cited. Here the bonds had been received and were held by the bank without lien in any third party, subject to plaintiff's order. Consequently, under the previous course of dealing, it was the bank's duty to

charge the same against the deposit and a court of equity will effectuate this result.

In recognition of its right to set off demands in its favor against deposits, the bank here continued, after the moratorium became effective, to charge such accounts with such demands as bad checks, previously cashed but returned to the bank as uncollectible. Had the securities purchased fallen in market value to 1/10th of their cost, the bank, entitled to reimbursement for its outlay, would have had the same right to charge the deposit account with the full amount of the purchase price. In other words, the right of set-off is mutual and exists without regard to whose specific benefit it may, as a practical matter, contribute.

In the case of Blakey v. Brinson, 286 U. S. 254, 52 S. Ct. 516, 76 L. Ed. 1089, 82 A. L. R. 1288, upon which defendant relies, the bonds ordered were never purchased by the bank or delivered to it. The court in this situation refused to impress the general deposit with a trust character. It is not apparent how any other result could have been reached, for what the plaintiff had there was merely a right of action for breach of contract upon the part of the bank to make the purchase as it had agreed to do. The cases of In re North Mo. Trust Co. (Mo. App.) 39 S.W.(2d) 412; Gibson v. Bank (Mo. App.) 52 S.W.(2d) 411; Howland v. People ex rel., 229 Ill. App. 23; and Andrew v. Bank, 205 Iowa, 888, 219 N. W. 53, are of similar import. In neither instance had the bank purchased the property it had agreed to buy. However, in Evans v. French, 222 Mo. App. 990, 6 S.W.(2d) 655, under the particular facts there existing, though the securities had not been purchased, the court held that money deposited in the bank to pay for the bonds, constituted a trust fund.

Since this cause was tried, the conservator has been succeeded by trustees who have received the bonds from him and hold same subject to the rights of plaintiff. These trustees have been made parties defendant and have deposited the bonds with the clerk of this court subject to the order of the court.

There will be a decree for plaintiff against defendants directing the clerk to deliver the bonds to her as prayed, at the cost of defendants.

In the foregoing I have included all of the essential facts and my conclusions of law. Hence, there are no separate findings and conclusions, the foregoing being adopted as such.