(No. 78-CC-1087— ▉▉▉▉▉▉▉▉▉▉▉

COUNTY OF COOK, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed July 7, 1983.*

*Order filed September 6, 1983.*

RICHARD M. DALEY, State's Attorney (PAUL P. BIEBEL, JR., and MARK V. CHESTER, Assistant State's Attorneys, of counsel), for Claimant.

NEIL F. HARTIGAN, Attorney General (FRANCIS M. DONOVAN, Assistant Attorney General, of counsel), for Respondent.

ROE, C.J.

Claimant, County of Cook, brings this action against the State of Illinois, Department of Public Aid, seeking $363,807.83 alleged to be due under sections 12—5 and 12—8.4 of the Illinois Public Aid Code (Ill. Rev. Stat. 1971, ch. 23, pars. 12—5, 12—18.4). A hearing on the matter was held November 19, 1980.

The case is an offspring of the litigation in *Bess v. Daniel* (1976), 42 Ill. App. 3d 401, 355 N.E.2d 556, where Judge Stamos held the County liable for overtime wages due certain employees of the Cook County Department of Public Aid in connection with its "Homemakers" program. Accordingly, the County has satisfied the judgment order of June 22, 1977, in the amount of $363,807.83. The County now contends that the Illinois Department of Public Aid is obligated to indemnify the County for all monies expended in satisfying the judgment. For reasons to be stated, we hold that because the Cook County Department of Public Aid employed the homemakers while acting as administrative agents of the Illinois Department of Public Aid, the State is owing to the County in the amount prayed for.

The Cook County Department of Public Aid employed homemakers to care for disabled welfare recipients. If necessary, during their assignments, these individuals were required to perform their duties at the welfare recipients' homes around the clock, and for periods of up to two weeks straight. In *Bess v. Daniel, supra,* the plaintiff homemakers alleged that the eight-hour-per-day wage ($25.00) was unjustifiably low compensation for their work. The trial court agreed and awarded an additional four-hours-per-day pay for the period in question. The appellate court affirmed the lower court's determination of liability but modified the damage award. Relying on testimony of the director of the County Department of Public Aid that the plaintiffs averaged not eight, but 16, hours of work per day, Judge Stamos awarded four hours pay in addition to the four awarded by the trial judge. The question before this Court is who is ultimately responsible for the final judgment awarding the additional eight hours pay.

The reasons for which the issue of liability between the County and the State has as yet remained unadjudicated are essentially procedural and do not go to the merits of the case. In the trial court, Judge Epstein was aware of the issue's presence and has the following remarks:

"Whether the County, if I should make an allowance of the overtime pay, is allowed a reimbursement of the State, is a matter that is not before me, and may have to be adjudicated in the Court of Claims. But that's between the County and the State."

Thus, while finding that the homemakers were employees of the County, Judge Epstein saw his task only as determining who, if anyone, was liable to the plaintiffs. In other words, the plaintiffs were solely concerned with finding either the County or the State liable. Whether the County would have recourse to the State if ultimately found to be the employer was to them irrelevant. Since the plaintiffs never raised the issue, it was rightfully left open.

On appeal, the County raised the question whether the State, rather than itself, was ultimately liable for the damages awarded by the trial court. Their first argument was that contrary to the trial court's conclusion, prior to January 1, 1974, the County Department of Public Aid was merely an agent for the State of Illinois and therefore homemakers were employees of the State rather than the County. While the litigation in *Bess v. Daniels, supra,* was in progress, however, the Supreme Court decided *Merrill v. Drazek* (1975), 62 Ill. 2d 1, 338 N.E.2d 164, where it was held:

"Although prior to January 1, 1974, the County Department served as agent of the Illinois Department in the administration of the programs ... the clearly expressed legislative intent was that its employees be employees of Cook County."

This holding disposed of the County's theory concerning who employed the homemakers. Alternatively,

the County contended that the State still must ultimately bear the financial burden under sections 12—5 and 12—8.4 of the Public Aid Code. (Ill. Rev. Stat. 1971, ch. 23, pars. 12—5, 12—8.4.) The County argued that these statutes require the State to reimburse the County for all administrative expenses of the County Department of Public Aid. Judge Stamos declined to rule on this argument for the following reason:

"This is an issue that is exclusively a matter for resolution between the County and the State and is of no concern to the plaintiffs. Our decision does not, in any way, foreclose the County from later pursuing any cause of action it may have against the State. We hold only that because the issue was not decided by the trial judge, it is not properly before the court."

Now that this question has been raised before the proper forum, we can begin by looking to the relevant statutes. Did the legislature intend that the County or the State be financially responsible for the additional wage payments made in connection with the home-makers program? Two statutes must be considered, the first of which reads:

"The Illinois Department of Public Aid shall order for payment by warrant grants for public aid under articles II, IV, and V . . . and all costs of administration of the Illinois Department and the County department relating thereto." Ill. Rev. Stat. 1971, ch. 23, par. 12—5.)

and the second:

"The County Board shall appropriate funds for the actual and necessary administrative expenses of the County Department incurred in the discharge of its duties in administering the funds prescribed by sec. 12—2. . . ." Ill. Rev. Stat. 1971, ch. 23, par. 12—18.4.

Read in conjunction, these statutes clearly indicate that the legislature intended that the County be reimbursed for monies expended in administering the home-makers program. In fact, while the program was in effect, the Illinois Department consistently reimbursed the County Department for such wage payments. Now that additional payments for the work performed have been compelled by a court order, it is strange for the

Illinois Department to argue as an affirmative defense that the County's satisfaction of the judgment was extraordinary, and not a necessary administrative expense. The Illinois Department acquiesced in payments for the work all along. Compliance with a court order to pay wages in addition to those already authorized by a principal of his agent is manifestly a necessary administrative expense. Furthermore, a basic rule in the relationship between principal and agent is that the principal is bound to indemnify the agent against the consequences of all lawful acts done pursuant to authority conferred. Where a principal directs an agent to act on his behalf, the law implies a promise or indemnity by the principal for damages or losses resulting to the agent proximately from the execution of the agent. (*Messick v. Rardin* (1934), 6 F.Supp. 200, 201.) Thus, the statutory scheme and traditional common law dictate that as agent of the Illinois Department, the County Department is entitled to reimbursement and the Court so holds.

We must note that this conclusion is in no way inconsistent with the Supreme Court's decision in *Merrill v. Drazek, supra.* There, as noted above, it was held that employees of the County Department of Public Aid were indeed to be deemed employees of the County Department. Involved there, however, was only a declaratory judgment as to who the proper party was for plaintiffs to proceed against. The opinion contains no language that nullifies the ultimate responsibility of the Illinois Department arising from its agency with the County Department. *Merrill v. Drazek, supra,* only decided that primary responsibility should rest with the County.

Finally, the State raises as an affirmative defense that because the County breached an agreement with the

Illinois Department regarding payment of the damages in *Bess v. Daniel, supra*, the County is foreclosed from any reimbursement. The State contends that an oral agreement was reached whereby if the County did not appeal the trial court's decision, the State would satisfy the judgment order. Thus, maintains the State, when the County appealed, it breached the agreement and forfeited its right to indemnification. Evidence adduced in the hearing before Commissioner Walsh, however, indicates that no such agreement was ever reached. George Grumley, an attorney for the State closely involved in communications between the Illinois Department and the County Department, testified as follows:

"I can't really say that we ever, between the two of us reached an agreement *per se*."

This testimony is in accord with that of Sheldon Gardner, who during the pendency of the *Bess v. Daniel, supra,* litigation was the Chief of the Civil Division of the Cook County State's Attorney's Office. He maintained that no agreement was reached, or even could have been reached without the approval of the Cook County Board. This approval was never gotten. The State offers, as evidence of the agreement, a letter purportedly drafted at the request of Gardner containing the terms of an agreement between the County and the State. Yet, there is nowhere evidence of the County's assent to it. It is merely a one-sided communication between representatives of the State.

In fact, the County's position was that it had at all times acted as the agent of the State and that the State should be held liable. The Court finds this position is sound. It is hereby ordered that the State of Illinois Department of Public Aid reimburse the County of Cook in the sum of $363,807.83, the amount expended by

the County in satisfying the Circuit Court's judgment order, as modified in *Bess v. Daniel, supra.*

## ORDER

Roe, C.J.

This cause comes on to be heard on the Court's own motion for the purpose of clarifying our opinion rendered July 7, 1983.

In the final paragraph of said opinion we rendered judgment for the Claimant in the amount of $363,807.83. In so doing it was not our intention that the language therein be construed as an order that or direction to the Department of Public Aid (the Respondent's agency being sued) to pay this sum. Rather, it was our intention that the judgment be treated as any other award made by this Court and paid according to the usual and customary procedures for paying such awards.

It is hereby ordered that said opinion be, and hereby is, modified so as to reflect our intention stated herein.